# Exhibit K

## Jason Manuel Deposition

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:24-cv-01068-FDW-SCR

BETH ARBUCKLE,

Plaintiff,

-vs-

WELLS FARGO BANK, N.A.,

Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _

VOLUME 1

VIDEOCONFERENCE DEPOSITION

OF

**JASON MANUEL**

December 3, 2025

Boerne, Texas

**Michelle S. Thompson**
**THOMPSON & MILLS COURT REPORTERS**
michelle@thompsonmills.com
**5425 Closeburn Road, Unit 311**
**Charlotte, NC 28210**
**704.564.5249**

A. Just keep going through the -- so after that, ma'am, I would then schedule or formulate -- if this is an event where I needed to contact witnesses to interview, I would formulate a plan to contact the witnesses, formulate questions to keep it general, to keep it professional and see what facts will be gathered from talking to those witnesses.
Q. Okay.
A. There are times where in -- in concert with interviewing witnesses I would then seek out the capability if there's other factual information that can be gathered. Sometimes it's documents. Sometimes it's financial information. Sometimes it's whatever data I can pull or see. Sometimes there's nothing that comes back to support that allegation that was raised.
Q. Okay. And then after you've done these steps, what would you do next after you had scheduled these interviews and done the background check, if there were something else capable for you to look for?
A. Well, once the -- once I schedule the interviews and then I gather that information -- sometimes it's before, sometimes it's during -- then I would conduct the interviews, ma'am.

A. Yes, ma'am.
Q. Let's look at **Exhibit 5** to your deposition -- to the depositions. Do you see a document on the screen?
A. Yes.
Q. This is a document that you wrote to Beth Arbuckle on April 18, 2023, correct?
A. Yes, as I see it there.
Q. And this is one of the two documents that I had emailed to you to try to schedule your deposition. Do you recall reading it a couple days ago?
A. Yes. That's what you submit -- you sent via email.
Q. Okay. So let's walk through it a little bit together. At the time that you are sending her this Plaintiff's Exhibit 5 that's on the screen, you had actually talked to her the day before, correct?
A. I'm not certain the exact time or --
Q. Yes. Not a trick question. The first sentence you say is, Thank you for speaking with me on April 17, 2023.
Do you see that on Plaintiff's Exhibit 5?
A. Yes.
Q. Okay. And so do you recall having a conversation with her on or around April 17, 2023?

understand, what else there is that they haven't given us.

I'm showing you this document that is Plaintiff's Exhibit 5. It appears to be a summary. My question is, did you -- did you keep notes separate and apart from this memo that you used to write this memo, or is this memo the only notes that you took?

A. No, ma'am, other than the EAP system, the case -- the notes -- the interview notes would be with that packaged with the case.

Q. After you had interviewed Mrs. Arbuckle and you had prepared your notes, did you then separately prepare this memo to her restating your understanding of your conversation with her?

A. Yes.

Q. Now did anybody help you prepare this memo?

A. Interview with the manager before we submit it. It is sent to make sure that what we're looking into is what they -- the concerns that they raised.

Q. Now at the bottom you had written specifically to Beth that she was expected to fully cooperate with the investigation process, honestly answer all questions, provide all information, documents that you believe may help me review and address your

concerns, and maintain confidentiality of the process. Do you see that?
A. Oh, yes, the four -- the bullet points at the bottom.
Q. Yes. You see that?
A. Yes.
Q. Now did you expect honest answers to all your questions and honesty from every person you interviewed related to this matter?
A. Yes.
Q. Now at any point in time did anyone at Wells Fargo tell you that they had made the decision to fire Beth Arbuckle after she complained during her review in January of 2023?
MS. SATTERFIELD: Objection to the form.
Q. (By Ms. Gessner) You can answer it.
A. Would you please ask that again?
Q. Sure. At any point in time did anyone at Wells Fargo inform you that they had made the decision to fire Beth Arbuckle while you were investigating her complaint?
MS. SATTERFIELD: Objection to the form.
A. What's that, ma'am? I didn't hear you.

Q. (By Ms. Gessner) Don't --
MS. SATTERFIELD: I'm making an objection for the record. You don't have to worry about it. You can go ahead and answer.
A. No -- no, ma'am. No one told me anything about firing someone, no.
Q. (By Ms. Gessner) Now Wells Fargo's likes to play games with words, so let me ask it a different way. Did anyone at Wells Fargo ever tell you that Ms. Arbuckle was going to be displaced while you were investigating her concerns?
A. If they did it may have been or should have been in the interview notes.
Q. So that's my question. If somebody had told you, yeah, we've already made the decision we're going to displace or fire Beth, would you have recorded that in your interview notes and your memos?
A. Maybe so. I don't recall for certain, but maybe so, if it was mentioned.
Q. Let's look at **Plaintiff's Exhibit 4**. Do you see another document on the screen?
A. Yes, ma'am.
Q. And this is a six-page document. It was the second document that I had attached in my emails that I